**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| LANDMARK INFRASTRUCTURE HOLDING COMPANY LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 2:15-CV-04064-NKL |
| R.E.D. INVESTMENTS, LLC, and BOBBY VAN STAVERN, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Pending before the Court is plaintiff Landmark Infrastructure Holding Company LLC's motion for an award of attorneys' fees and nontaxable costs, Doc. 197. For the following reasons, the motion is granted in part.

### I. Background

This case involves a purchase agreement between Landmark and defendant R.E.D. Investments, LLC.[1] The agreement provided that Landmark would pay R.E.D. $902,358.11 in exchange for the right to receive base rents under a billboard lease and a 99-year easement over a portion of R.E.D.'s real property.

Paragraph 4 of the Purchase Agreement contained a "Representation and Covenant" that "[R.E.D.] has not received notice of a rent reduction by the billboard tenant under the Billboard lease or notice of any fact, condition or circumstance that would result in a rent reduction." However, the evidence showed that at the time the Purchase Agreement was executed, R.E.D.

---

[1] Defendant Bobby Van Stavern is the agent of R.E.D. who signed the agreement on its behalf. Mr. Stavern is not a named defendant on Landmark's breach of contract claim and the jury returned damages on the contract claim only against R.E.D.

and Van Stavern knew or had reason to know that the billboard tenant under the lease, Lamar Advertising, had requested or would be requesting a rent reduction.

Paragraph 9(e) of the Purchase Agreement provides that "[i]n any action or proceeding brought to enforce any provision of this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs, whether through arbitration or a court of competent jurisdiction." (Ex. 1, ¶ 9(e)).

The case was tried before a jury beginning January 16, 2018. Three claims were submitted to the jury: fraudulent misrepresentation and negligent misrepresentation claims against both Defendants, and a breach of contract claim against R.E.D.

On January 18, 2018, the jury returned a verdict in Landmark's favor on the negligent misrepresentation claim and assessed damages in Landmark's favor against both Defendants in the amount of $381,234.11. The jury also returned a verdict in Landmark's favor on the breach of contract claim and assessed damages in Landmark's favor against R.E.D. in the amount of $156,000.00.

Landmark now asks for $211,704.74 in attorney fees against R.E.D., pursuant to Paragraph 9(e) of the Purchase Agreement. R.E.D. does not object to the reasonableness of the rates charged by Landmark's attorney, nor does it contest the actual hours billed. It also tacitly concedes that Landmark is the prevailing party on the contract claim. Instead, R.E.D. claims that Paragraph 9(e) of the Purchase Agreement does not authorize attorney fees under these circumstances because Landmark's claim for breach of contract was not an action to enforce the Purchase Agreement.

## II.    Discussion

"If a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." *Doc Magic, Inc. v. Mortgage P'ship of Am., L.L.C.*, 729 F.3d 808, 812 (8th Cir. 2013) (quoting *Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 612 (Mo. Ct. App. 2009)).    "A 'prevailing party' is one who obtains a judgment from the court, regardless of the amount of damages." *Id.* (quoting *Brooke Drywall of Columbia, Inc. v. Building Constr. Enters., Inc.*, 361 S.W.3d 22, 27 (Mo. Ct. App. 2011)).

The first question to be addressed is whether Landmark's contract claim sought to "enforce" the Purchase Agreement.  R.E.D. claims it does not because it only seeks damages for a breach of a term of the contract.  The only case cited in support of this proposition is *McPherson Redevelopment Corp., v. Shelton*, 807 S.W.2d 203 (Mo Ct. App. 1991), which R.E.D. acknowledges is "not exactly on point."  Doc. 198, at 5.  In that case the court held that a condemnation became an action to enforce a contract when the matter was settled by a written agreement.  *McPherson* did not hold, nor did it imply, that a suit for a breach of contract was not an action to enforce the contract.  In contrast, Landmark cites *Evans v. Werle*, 31 S.W.3d 489, 493 (Mo. App. W.D. 2000), where the court awarded attorneys' fees to plaintiffs who sued a contractor for failure to perform in a workmanlike manner when a contractual provision provided for an award of attorneys' fees "[s]hould either party . . . bring suit . . . to enforce the terms hereof."    Considering all the language in the Purchase Agreement as well as the specific language in paragraph 4, the Court concludes that Landmark's contract claim was one to enforce the contract.  Seeking damages for failing to comply with the terms of a contract is enforcing the contract.  *See*, Webster's Ninth New Collegiate Dictionary, 412 (1988) (To enforce means "to

3

give force to" and "to carry out effectively"). Awarding damages for breaching a term of the contract "gives force to" the terms of the contract.

R.E.D. also contends that any attorney fee award must reflect time spent on the contract claim and not time spent on the fraudulent and negligent misrepresentation claims. Landmark was unsuccessful on the fraudulent misrepresentation claim and the jury returned a different verdict for the negligent misrepresentation claim than for the contract claim. However, when claims are related and arise out of the same core of operative facts, there will be substantial overlap, making it difficult to parse the hours attributable to each claim. *See, e.g.*, *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (holding that, even if unsuccessful on some claims, a prevailing party may be compensated for fees incurred for the claim on which the party prevailed and "related claims" that "involve a common core of facts"); *Nelson v. Shuffman*, No. 06-674 JCH, 2011 WL 3099900, at *3 (E.D. Mo. July 25, 2011) ("[B]ecause the claims were interrelated and overlapping, the Court finds Plaintiffs' attorneys[] 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis.'"); *CGM Air Grp., LLC v. Chevron U.S.A., Inc.*, No. 07–00168, 2009 WL 1810743, at *2 (D. Nev. June 24, 2009) ("In this case, the Court finds that the causes of action asserted in GCM's Second Amended Complaint are so intertwined that it is impracticable to apportion the fee award based on time incurred defending the contract cause of action from the other remaining claims.").

Nonetheless, there clearly was some time spent solely on the issue of what damages were appropriate for the fraudulent misrepresentation claim, as well as separate pleadings and jury instructions for each claim. Because R.E.D. does not identify any entries that reflect this additional time, and given the minor nature of the overlap, the Court reduces the fee award by

$4000, which represents approximately twenty hours of time by lead counsel.  This is a rough estimate based on the Court's experience during the case, including a review of the docket sheet.

The Court finds that a reasonable attorney fee for work on the breach of contract claim is $207,704.74.

## III.    Conclusion

For the reasons set forth above, Plaintiff's motion for award of attorneys' fees and nontaxable costs, Doc. 197, is granted in part.  Plaintiff is awarded $207,704.74 in attorney fees.


/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 30, 2018
Jefferson City, Missouri

5